IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALEX RYLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-733 (MN) |
| | ) |
| IRENE FUH, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Alex Ryle, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Nicholas Robert Wynn, Esquire, WHITE & WILLIAMS LLP, Wilmington, Delaware. Counsel for Defendants Irene Fuh, Kathleen M. Gustafson, Katie A. Wheeler, Connections Community Support Programs, Inc., and Tamar Jackson.

June 20, 2019
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

Plaintiff Alex Ryle ("Plaintiff"), who appears *pro se* and was granted permission to proceed *in forma pauperis*, is an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. He filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He also raises supplemental state claims. (*Id.*). On May 17, 2019, Plaintiff filed an Amended Complaint. (D.I. 38). Before the Court are Defendants' unopposed motion to dismiss, Plaintiff's motion for leave to file a document under seal, and Defendants' motion for review of affidavit of merit. (D.I. 19, 36, 39).

## I. BACKGROUND

The original Complaint raises medical needs claims under the Eighth Amendment and medical negligence claims under Delaware law. (D.I. 3). A service order issued on September 25, 2018. (D.I. 8). On February 19, 2019, Defendants Irene Fuh ("Fuh"), Katie Wheeler ("Wheeler"), Dr. Tamara Jackson ("Jackson"), Kathleen Gustafson ("Gustafson"), and Connections Community Support Programs, Inc. ("Connections") (collectively, "Defendants") filed a motion to dismiss. (D.I. 19). Plaintiff requested an extension of time (D.I. 25) to file a response to the motion. On February 28, 2019, the Court granted that request giving Plaintiff until May 21, 2019 to file a response.

On March 5, 2019, Plaintiff filed an Amended Complaint. (D.I. 28). Two days later, Plaintiff filed a motion to strike or withdraw the Amended Complaint, granted by the Court on March 20, 2019. (D.I. 32, 34). The Order reiterated that Plaintiff's response to Defendants' motion to dismiss was due on May 21, 2019. (D.I. 34). On May 13, 2019, Plaintiff filed a

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

motion for leave to file a document under seal, and on May 15, 2019, he filed an affidavit of merit. (D.I. 36, 37). On May 17, 2019, Plaintiff filed an Amended Complaint without leave of court in derogation of Fed. R. Civ. P. 15(a)(1).[2] (D.I. 38). On May 21, 2019, Defendants filed a motion for review of the affidavit of merit.[3] (D.I. 39). To date, Plaintiff has not filed a file a response to Defendants' motion to dismiss.

The original Complaint[4] alleges that after Plaintiff injured his hand on December 6, 2016, he was treated at the JTVCC infirmary by Fuh and Defendant Jane Doe ("Doe"). (D.I. 3 ¶ 1). Plaintiff was given pain medication and a hand splint. (*Id*.). He alleges the pills provided no relief and the splint aggravated his pain. (*Id*.). Plaintiff alleges that Fuh "led the exam and was adamant that [his] hand was not broken, notwithstanding [Plaintiff's] assertion that [his] hand was hurting intensely and the prominent protrusion." (*Id*.). Fuh instructed Plaintiff to submit a sick-call slip so that he could receive treatment. (*Id*.).

Plaintiff submitted a sick call slip and was seen in medical on December 10, 2016 by Fuh and R.N. Wheeler. (*Id*. ¶ 2). Fuh diagnosed Plaintiff with swollen muscles and tendons, not a broken hand. (*Id*.). After Fuh telephoned Gustafson, she informed Plaintiff he would be x-rayed on December 12, 2016. (*Id*. ¶ 2). Plaintiff was not called for the December 12, 2016 x-

---

[2] "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

[3] Plaintiff subsequently filed two additional Affidavits of Merit. (D.I. 40, 41). On June 10, 2019, Defendants filed a letter asking "the Court to consider their May 21, 2019, motion as a request to review all affidavits of merit filed by Plaintiff." (D.I. 42).

[4] On October 12, 2018 Plaintiff identified the First On-Call Provider as Defendant Nurse Practitioner Kathleen M. Gustafson and Jane Doe 2 as Defendant Certified Nursing Assistant Bryce Viall-Green ("Green"). (D.I. 9). Both have been served. (D.I. 12, 35). The allegations in the Amended Complaint are very similar to those in the original Complaint. (*Compare* D.I. 3 to D.I. 38).

ray, medical was contacted, and Plaintiff was advised that the x-ray would take place on December 16, 2016. (*Id*. ¶ 3). Plaintiff was x-rayed and taken to the emergency room at Kent General Hospital that day. (*Id*. ¶ 4). At Kent General, Plaintiff was seen by an emergency room physician and an orthopedic specialist. (*Id*.). Plaintiff alleges that both failed to "fix [his] various injuries." (*Id*.). Plaintiff alleges that the healthcare providers told him that due to the lapse of time between his injury and emergency room visit, their resetting attempts were no longer viable. (*Id*.).

Plaintiff alleges the delay in treatment by Fuh, Doe, Wheeler, and Gustafson demonstrates deliberate indifference to a serious medical need in violation of the Eighth Amendment and medical negligence under Delaware law. (*Id.* ¶ 6). In addition, he alleges that Connections' policy that requires inmates to submit sick-call slips prior to receiving medical care, exacerbated his hand injury and demonstrates deliberate indifference to a serious medical need and medical negligence. (*Id.* ¶ 7).

During the last week of December 2016, Plaintiff was evaluated by a surgeon and advised that surgery was necessary. (*Id*. ¶ 9). The surgeon asked why it had taken so long for Plaintiff to get an appointment. (*Id*.). Surgery was performed on January 5, 2017. (*Id*. ¶ 10). The surgeon advised Plaintiff that the anesthesia would wear off in a few hours and he prescribed Plaintiff pain medication. (*Id*.). When Plaintiff returned to the JTVCC he began having extreme pain and notified nurse Green. (*Id*.). Green offered Plaintiff Ibuprofen or to call Defendant Second On-Call Provider ("Second On-Call Provider") for something stronger. (*Id*.). Plaintiff asked Green to call the On-Call Provider. (*Id*.) Green told Plaintiff that the On-Call Provider would not issue anything else. (*Id*.). Plaintiff alleges he was compelled to wait more than ten hours to get adequate pain relief. (*Id*.). Plaintiff alleges that Green and the On-Call

5

Provider failed to get him proper pain relief following surgery and Dr. Jackson failed to create an appropriate post-surgery pain management plan in violation of the Eighth Amendment and Delaware's medical negligence law. (*Id*. ¶ 11).

Plaintiff spent five days in the infirmary following surgery. (*Id.* ¶ 13). Plaintiff alleges his transfer was in contravention of Dr. Jackson's declaration that it was policy for Plaintiff to remain housed in the infirmary for months to convalesce according to medical and security policies. (*Id*.).

Plaintiff seeks compensatory and punitive damages, declaratory relief, and an injunction for Connections to reform its policy/common practice of denying inmates medical care without filing a sick-call slip. (*Id*. Section VII.).

Defendants' unopposed motion to dismiss seeks dismissal for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) Plaintiff did not allege any personal action or inaction by Defendants that amounts to claims of deliberate indifference; (2) Plaintiff did not submit an affidavit of merit when he filed the original complaint; and (3) the claim against Connections fails because the sick call system is the responsibility of the Delaware Department of Correction ("DOC") and not Connections. (D.I. 19).

## II. <u>LEGAL STANDARD</u>

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded

facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

The Court will strike Plaintiff's Amended Complaint given that it was filed without leave of Court and in derogation of Fed. R. Civ. P. 15. (*See* D.I. 38). Having said that, the Amended Complaint is so similar to the original Complaint, that the Court's analysis on dismissal would be the same even were the Amended Complaint the operative pleading.

### A. Medical Needs

Defendants seeks dismissal of the Eighth Amendment claims against Wheeler and Gustafson for their lack of personal involvement, and against Fuh and Dr. Jackson for Plaintiff's failure to allege deliberate indifference to a serious medical need.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

"[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution, *Estelle*, 429 U.S. at 106, merely negligent treatment does not give rise to a constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d

Cir. 2004). Indeed, "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill*, 372 F.3d at 235.

With regard to Wheeler and Gustafson, the allegations do not demonstrate their personal involvement in any alleged constitutional violations. "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Here, the Complaint alleges simply that Wheeler was present when Plaintiff was examined by Fuh in the infirmary on December 6, 2016. The allegations do not rise to the level of deliberate indifference to a serious medical need. As to Gustafson, the Complaint alleges that Gustafson told Fuh that Plaintiff's x-ray was scheduled for December 12, 2016. Similar to the claims against Wheeler, the allegations do not rise to the level of deliberate indifference to a serious medical need.

The allegations against Fuh are that she provided treatment to Plaintiff on December 6, 2016, the day he was injured, but she did not properly diagnose Plaintiff's injury and the treatment she provided was inadequate. The Complaint alleges that when Plaintiff was seen by Fuh on December 10, 2016, again she did not properly diagnose Plaintiff's injury. At the December 10, 2016 visit with Fuh, an x-ray was scheduled for Plaintiff to take place two days later, on December 12, 2016. It did not take place until December 16, 2016; however, there are no allegations that Fuh had anything to do with the delay. The allegations against Fuh do not rise to the level of deliberate indifference to a serious medical need. Rather, they indicate that she

provided Plaintiff treatment on two separate occasions. While Plaintiff may not agree with the treatment provided, the adequacy of the treatment, or the diagnosis rendered it cannot be said those concerns implicate violations of the Eighth Amendment. In addition, the allegations do not support a claim that Fuh delayed treatment who saw him a second time after he submitted a sick-call clip. Nor is there any indication that the four days between visits was motivated by non-medical factors. *See*, *e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017).

Finally, the Complaint alleges that Dr. Jackson failed to create an appropriate post-surgery pain management plan and transferred Plaintiff from the infirmary after five days in contravention of the policy that Plaintiff was to remain housed in the infirmary for months to convalesce according to medical and security policies. It is clear from these allegations that Plaintiff disagreed with Dr. Jackson's post-surgery management plan and disagreed with the decision to discharge Plaintiff from the infirmary. These claims, based upon Plaintiff's disagreement with the medical decisions of Dr. Jackson, do not rise to the level of constitutional violations.

Accordingly, the Court will grant Defendants' motion to dismiss the § 1983 claims raised against Fuh, Wheeler, Dr. Jackson, and Gustafson.[5]

---

[5] Plaintiff alleges that Green failed to give him proper pain relief following surgery. The allegations do not speak to a constitutional claim given the allegations that Green offered Plaintiff Ibuprofen and also unsuccessfully sought different medication from the On-Call Provider. The allegations against Green do not support a claim for deliberate indifference to a serious medical need. Nor do the allegations against Jane Doe rise to the level of a constitutional claim. As alleged, she and Fuh treated Plaintiff on the day he was injured. Finally, the claim against the Second On-Call Provider does not state a constitutional. Rather, the allegations are that Plaintiff disagreed with the decision to only give him Ibuprofen for pain. For these reasons, the Court will *sua sponte* dismiss the claims against Green, Jane Doe, and the Second On-Call Provider.

### B. Policy or Custom

Plaintiff alleges that Connections' policy requiring that inmates submit sick-call slips prior to receiving medical care exacerbated his hand injury and demonstrated deliberate indifference to a serious medical need. Defendants move for dismissal on the grounds that the sick-call system was established by the DOC pursuant to DOC Policy Number A-01 Access to Care. Defendants ask the Court to take judicial notice of the policy.

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Court has concluded that the allegations against the individual medical defendants did not violate Plaintiff's constitutional rights under the Eighth Amendment. Connections, therefore, cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating Plaintiff's rights. *See Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional

policy or custom responsible for violating prisoner's rights).  Notably, the policy in question is one established by the DOC and not Connections.

Accordingly, the Court will grant the motion to dismiss the claims raised against Connections.

### C. Medical Negligence

Because the Complaint fails to state a federal claim, the Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims.  *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Sarpolis v. Tereshko*, 625 F. App'x 594, 598-99 (3d Cir. 2016).

## IV. <u>CONCLUSION</u>

For the above reasons, the Court will:    (1) strike Plaintiff's amended complaint (D.I. 38); (2) grant Defendants' motion to dismiss the claims raised pursuant to 42 U.S.C. § 1983 (D.I. 19); (3) dismiss *sua sponte* the 42 U.S.C.§ 1983 claims raised against Nurse Green, Jane Doe, and Second On-Call Provider; (4) decline to exercise jurisdiction over Plaintiff's supplemental state claims; and (5) deny as moot all other pending motions (D.I. 36, 39).    Amendment is futile as to the 42 U.S.C. § 1983 claims.

An appropriate order will be entered.